## Hemmich *against* High.

An amicable partition of lands among devisees, one of whom at the time of partition was a minor, and to whom was allotted a portion greatly inferior in value to that devised to him, is not binding, although after he arrived at a lawful age he exercised acts of ownership upon the part allotted to him for several years.

APPEAL from the judgment of the circuit court of *Berks* county, held by Justice KENNEDY.

Ejectment by Joseph Hemmich against William High, to recover thirty-six acres and a hundred and fifty-four perches of land, which the plaintiff claimed as devisee under the will of his grandfather, John Hemmich deceased.

John Hemmich, the testator, died in November 1820, seised of about six hundred and fifty-five acres of land in Cumru township, Berks county, lying chiefly in one body; having by his last will devised to the plaintiff a grist mill and five acres of land, and also an adjoining tract of fifty acres, particularly described in the will. The residue of his real estate, about six hundred acres, he devised to his three sons, John, David (the plaintiff's father) and Joseph. At the time of his death, the plaintiff was a minor, about the age of fifteen. In April 1822, the three sons of the testator met together, without the knowledge of the plaintiff, and agreed to make partition among themselves. They procured a draft to be made, setting out their respective portions, and executed a partition deed with clauses of mutual conveyance and release, and took possession accordingly. In this deed was included, as part of the share conveyed to Joseph, one of the plaintiff's uncles, thirty-six acres and one hundred and fifty-four perches of the fifty acre tract devised to the plaintiff. The plaintiff was not mentioned in the partition, but in the draft there were set out for him eighteen acres and six perches of the fifty-five acres devised to him (including the grist mill and five acres) and a portion of the testator's other land, equal in quantity to the residue of the land devised to him, but consisting of a narrow strip of ground, embracing the hill side of a creek, part in wood, and the rest an inferior soil, some of it not susceptible of cultivation. The land devised to the plaintiff was all limestone land, of the first quality, worth more than four times as much as the ground set out for him.

During the plaintiff's minority, having no guardian, the land thus set out was leased by his father, who accounted to him for the rents after he came of age, which was in June 1826. In December 1826, the plaintiff leased part of the tract thus set out to him for a year: in December 1827, he leased the mill and the whole tract for a year,

and by a memorandum, renewed this lease for two years, and received the rents. In 1829, he gave it in to the assessor of taxes as his. In 1831, he brought this suit.

It was also in evidence on the part of the defendant, that the plaintiff, after coming of age, hauled wood off the strip of land set out to him, which had been cut by other persons, and forbade John Hemmich and others to cut wood there, saying he had possession.

The plaintiff proved, that at the making of the draft and partition deed, the uncles were aware that they could not make any disposition of the plaintiff's land; that John Hemmich said, old John Hemmich had shown a partiality to the plaintiff; and also, addressing the plaintiff's father, " your son makes out well enough by giving him the land allotted to him." The defendant purchased from the assignee of Joseph, the plaintiff's uncle, in April 1826, with notice that their title was doubtful. Some evidence was also given that the plaintiff knew before he came of age, that the strip of land set out for him was not the land devised.

In the circuit court, a verdict was taken for the plaintiff; and it now comes up by appeal.

The opinion of the Court was delivered by

SERGEANT, J.—It is contended by the defendant, that the conduct of the plaintiff after arriving at twenty-one, in retaining possession of the tract set out by the draft, and acting as its owner by receiving rents, making leases, cutting wood, and claiming possession, amounted to an acquiescence in the partition of 1822, which devested his title to the land devised : and cases have been cited to show what acts of an infant are void or voidable, and what conduct of his, after arriving at full age, amounts to a ratification of his acts. But the plaintiff was not in any way a party to the transaction, and therefore these authorities have no bearing on the case. The single question is, whether the acts of others, done during his minority, and without his participation, shall devest the plaintiff of a title secured to him by the will of his grandfather ; and there seems to me to be hardly the shadow of a pretence for it. The conduct of the sons in undertaking to appropriate his property to one of themselves, and select for him in lieu of it a strip of ground inferior in quality and situation, exhibits an utter disregard of his rights, if not a deliberate attempt to defraud. It would require, under such circumstances, a very clear and decided act on his part, made with a full knowledge of his rights, and freed from the influence his situation subjected him to, before he could be deemed to have assented to a substitution so injurious to his interests. Even in persons of full age, acts such as those given in evidence would not suffice to transfer the title to real estate. The property of an infant, if such an attempt could succeed, instead of being peculiarly protected by the law, would be constantly subject to invasion from the secret artifice or open attempts of others who might take a fancy to it. The sons had no right to intermeddle with this

[Hemmich v. High.]

property, unless to preserve it for the benefit of the infant. The seizure of it was unjustifiable, and the title thereby acquired being tortious, nothing has occurred on the part of the plaintiff to give it solidity. No deed or writing has been executed by him transferring his estate in the land, he is not barred by lapse of time, nor has he been guilty of any collusion or laches, by which, in equity, his title would be postponed.

Judgment of the circuit court affirmed.